UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ANETA BRODSKI and CHRIS BESECKER,

                               Plaintiffs,

        - against -

TISCH HOSPITAL and NYU LANGONE         **COMPLAINT and**
HEALTH SYSTEM and NYU LANGONE      **JURY TRIAL DEMAND**
HOSPITALS and CARNEGIE IMAGING

                         Defendant.
-------------------------------------------------------------------X

## COMPLAINT

Plaintiffs, ANETA BRODSKI and CHRIS BESECKER, through undersigned counsel, sue Defendants, TISCH HOSPITAL and NYU LANGONE HEALTH SYSTEM and NYU LANGONE HOSPITALS and CARNEGIE IMAGING and allege the following upon information and belief:

## NATURE OF THE ACTION

1. Aneta Brodski ("Aneta Brodski" or "Plaintiff Brodski") is deaf and communicates through American Sign Language. Chris Besecker ("Chris Besecker" or "Plaintiff Besecker") is hearing and is Aneta Brodski's husband. This action is on behalf of Aneta Brodski and Chris Besecker for declaratory and injunctive relief and monetary damages to redress the injuries Aneta Brodski and Chris Besecker have suffered as a result of being discriminated against by Defendants on the basis of disability and association with a person with a disability under the Americans with Disabilities Act ("ADA"); Section 504 of the Rehabilitation Act; New York State Human Rights Law; and the New York City Human Rights Law, to remedy injuries Plaintiffs have suffered as a result of being discriminated against, and deprived of public services

and public accommodations due to Plaintiff Brodski's disability. Aneta Brodski was admitted to Tisch Hospital for approximately five days for the delivery of her baby. During a substantial portion of her admission, she was deprived of an American Sign Language interpreter and/or auxiliary communication aids. Without the benefit of a qualified interpreter, Plaintiff Brodski had little to no knowledge of the labor process, treatment, delivery and care of herself and her newborn baby. Additionally, during this time, Plaintiff Besecker, the father of the baby, was compelled to try to help with effective communication for his wife, instead of being there as her support and to enjoy the birth of his first child.  Thus, Plaintiff Besecker asserts an associational claim due to his association with a person with disability.  Plaintiffs experienced discrimination which resulted in a violation of their civil rights through Defendants' policies and practices. The Complaint states causes of action under federal, state, and city law for deprivations of civil rights and states common law causes of action for tort.

## **JURISDICTION AND VENUE**

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this action arises under federal law, including the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq*. and Section 504 of the Rehabilitation Act pursuant to 29 U.S.C. §794 *et seq*. Plaintiffs  bring this action for violations of Title III of the ADA to redress the deprivation of rights, privileges, and immunities of which Plaintiffs have been deprived.

3.   Plaintiffs invoke the pendant jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367(a) for state law claims of the New York State Human Rights Law and New York City Human Rights Law.

4.   The Plaintiffs, ANETA BRODSKI and CHRIS BESECKER, bring this action under related state and federal laws seeking compensatory damages, injunctive relief, and attorney's fees

for the Defendants' violation of their rights afforded by the United States and New York Constitution and under the laws of The State of New York and the City of New York

5.   The venue of this action is properly placed in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the events having operative significance in this case which give rise to the claims herein occurred within this District.

6.   This Court has *in personam* jurisdiction over Defendants because they are located in, conduct operations within, transact business in and provides services within the City of New York.

## PARTIES

7.   Plaintiffs are residents of the State of New York and reside at 17 Clinton Hollow Road, Salt Point, New York 12578.

8.   At all times material herein, defendant TISCH HOSPITAL (hereinafter referred to as "TH"), is located at 550 First Avenue, New York, New York 10016.

9.   At all times material herein, defendant NYU LANGONE HEALTH,(hereinafter also referred to as "NYULH") is located at 550 First Avenue, New York, New York 10016.

10. At all times material herein, defendant NYU LANGONE HOSPITALS, (hereinafter also referred to as "NYULH HOSP") located at 550 First Avenue, New York, New York 10016.

11. At all times herein, defendant CARNEGIE IMAGING, (hereinafter referred to as "CARNEGIE") is located at 148 Madison Avenue, 10th Floor, New York, New York 10016.

## MATERIAL FACTS

12. At all times material herein, Plaintiff Aneta Brodski was deaf and her primary language was and remains American Sign Language. Plaintiff Brodski's ability to read, comprehend and write in English is limited.

3

13. At all times material herein, Plaintiff Chris Besecker was hearing and his primary language was and remains English.

14. On November 13, 2021, Plaintiff Aneta Brodksi was admitted to Tisch Hospital in labor with her first baby. Plaintiff Brodski was planning to have a home birth, but an ultrasound at Carnegie Imaging revealed problems with the baby's growth and a possible heart problem, prompting Plaintiffs to go to Mount Sinai. Mount Sinai discovered that the baby did have a heart issue. Plaintiffs then went to Woodhull Hospital as advised by their midwife as she felt their experience at Woodhull would be closest to a home birth. Woodhull however did not feel they were equipped to deal with the issue and referred Plaintiffs to Tisch Hospital.

15. Plaintiff Aneta Brodski had been a patient at Carnegie Imaging for over a year as she had obtained ultrasounds beginning in October of 2020 during her first pregnancy. Plaintiff went to Carnegie Imaging several times and stopped when she experienced a miscarriage in November of 2020. When Plaintiff got pregnant again in April of 2021 she began going again for ultrasounds until her baby was born in November of 2021. Plaintiff went approximately thirteen or fourteen times for ultrasounds and requested interpreters repeatedly so that she could effectively communicate during the ultrasounds and understand what the technicians were saying about her baby and ask questions. Each time, an interpreter was denied and Plaintiff failed to have full effective communication. Plaintiff Chris Besecker would attempt to help with communication if he was present or through facetime if he was not present. However, this was limited and caused Plaintiff much anxiety and stress as she went for her appointments without being fully able to understand and participate in the ultrasound process. This lack of communication was especially traumatic on the day that Plaintiffs found out that there was a problem with their baby as Plaintiff Aneta Brodski was alone with no interpreter and Plaintiff

Chris Besecker was on facetime trying to help with communication at the same time he learned that there was a problem with his baby.

16. Plaintiffs arrived at Tisch Hospital after being transferred from Woodhull Hospital via ambulance. Prior to being transferred, Plaintiff Aneta Brodski called Tisch Hospital to request that an American Sign Language interpreter be present upon her arrival. During the transfer in the ambulance. Plaintiff asked again if an interpreter would be at the hospital and was told that they did not know if one would be there. This caused  Plaintiff Aneta's blood pressure to rise while in the ambulance.  Upon arrival, no interpreter was present. Aneta Brodski was promptly taken to triage alone and unable to understand anything being spoken to her as her husband, Chris Besecker, was separated from her and sent through the security checkpoint.  Ms. Brodksi then called a close friend, Miriam, to come to the hospital to be with her during the delivery as a support person.

17. Plaintiff Brodksi was taken to triage by herself while her husband went through the security checkpoint. Upon arriving in triage, she again asked for an interpreter. This request was ignored, and staff began to ask her questions which she was unable to understand. Finally, Chris Besecker did arrive. Aneta Brodski then attempted to show staff a copy of her birth plan which she was unable to explain without the aid of a sign language interpreter, and instead had to rely on her husband to attempt to explain the birthing process she desired.

18. During triage Aneta Brodski expressed clear signs that she was frustrated and scared at not being able to communicate without a sign language interpreter The nurse took plaintiff Brodski's blood pressure and found it to be very high. Realizing how stressed  plaintiff Brodski was after taking her blood pressure, the nurse decided to attempt to use a video remote interpreter and brought one into the room. However, it was not usable as it was not charged and

would not turn on. Plaintiffs remained in triage for two hours with no interpreter. Instead, staff relied on the plaintiff's friend Miriam and her husband, Chris Besecker, both who were there as support for Aneta Brodski during her labor, not as sign language interpreters. Finally, two and a half hours after plaintiffs' arrival, the VRI was charged enough for hospital staff to get a connection with the VRI. However, this connection only stayed connected for approximately one minute, then disconnected. Despite multiple attempts to reconnect, the VRI kept freezing and disconnecting, allowing no information to be relayed to plaintiff Brodski through the interpreter.

19. Defendants then moved Plaintiff Aneta Brodksi to a labor room, and told Plaintiff Brodski through her husband and friend that they would need to induce her. When the inducing process started, Plaintiff Brodski was not informed of how Defendants were going to induce her or what to expect when they did. The doctor placed a balloon inside Aneta Brodski for induction without Plaintiff Brodski understanding the nature of its function. Aneta Brodski moved her body as it was uncomfortable and immediately felt intense pain. The doctor then told Chris Besecker that Plaintiff Brodski should not have moved. Aneta Brodski would have understood not to move following the induction of the balloon had there been an ASL interpreter present and interpreting before the procedure to insert the balloon. Aneta Brodski was confused, subjected to unnecessary physical pain and unable to ask any questions of the medical staff without a qualified American Sign Language interpreter present.

20. Throughout triage and induction, plaintiff Aneta Brodski, plaintiff Chris Besecker, and friend Miriam all implored staff repeatedly to provide an interpreter as Chris Besecker and Miriam were present not as interpreters, but as labor support for Ms. Brodksi. Chris Besecker especially was there only to support, witness, and help with the delivery of his first child. Instead, Chris Besecker was relied upon to communicate between staff and his wife. During a

6

portion of this time a Video remote interpreter was used, but often the connection was choppy and blurry causing plaintiff Brodski to often try to rely on her husband and/or friend to try to help with the communication process. This caused immense frustration and distress as Plaintiff Brodski  was denied effective communication.

21. After induction, Aneta Brodski's labor stopped twice. She was unaware as to why this took place and did not understand as there was no  sign language interpreter present. She was then given Pitocin to speed up her labor, again without being told what it was or the effect it would have on her. Aneta Brodski was given no warning that this drug would intensely accelerate her contractions which would become much more painful. After two days in labor in the hospital Aneta Brodski was exhausted and in extreme pain. Despite the absence of ASL interpreters, there was a lack of effective communication. Further, staff asked Aneta Brodski if she wanted an epidural which she refused as she did not know why she needed it and what it would do to her. Finally, she agreed after a substantial amount of time, while in increased physical pain and only after her friend told her that she should receive the epidural, but again there was no information effectively communicated to her about the process or possible side effects. Aneta Brodski learned a month later that the reason why she was unable to walk properly or stand on her own for a month after the birth was as a result of the side effects of the epidural.

22. During Aneta Brodski's labor, a pediatrician came in and attempted to speak with her about certain vaccines that the baby required immediately after birth. Aneta Brodksi was unaware of the baby's need for vaccines right away and wanted to ask the doctor why the vaccines are required and the necessity of administering them. Ms. Brodksi was unable to ask questions without a sign language interpreter. Instead, the doctor relied upon Chris Besecker and Miriam to help translate. Aneta Brodski was told that the hospital would get a lawyer and take

the baby away if she refused. Without being able to directly ask the doctor questions, Aneta Brodski was compelled to consent, even though she did not understand the reasons for, and was not sure that she wanted the baby to have the, vaccines, but was scared that her baby would be taken away from her if she withheld her consent.

23. Aneta Brodski was very worried about her baby after being in labor for two days and having substantially limited information about what was happening to the baby during labor. She saw doctors rushing around and felt something was very wrong. Aneta then asked her husband and friend to ask   for a c-section as her worries about her baby increased, compounded by her lack of information leading her to conclude that ,she needed a c-section to safely deliver the baby. Chris Besecker and Miriam discouraged her from having a c-section, as Aneta Brodski had originally planned a natural home birth, and doctors were not suggesting a c-section at that time. Instea her husband  informed her that they were going to use a vacuum to deliver the baby which terrified her but which she once again had no way to discuss through effective communication. Aneta Brodski agreed to this without having an opportunity to effectively communicate with the doctor concerning   the process or risks. Aneta Brodski had no knowledge of the process or possible consequences of this treatment. Finally, Ms. Brodksi's baby was born and immediately brought to the NICU for monitoring. Aneta Brodski again was not provided with an interpreter to ask questions and learn about the health of her baby and her own care after the birth. All information was given to her husband and she was left in the dark.

24 .During the entire duration of Aneta Brodski's son's birth, which included   Aneta Brodski's induction, an ultrasound, an epidural, Pitocin, a vacuum delivery, labor, questions about treatment of herself and her newborn baby, Aneta Brodski was left without full effective communication. After the birth, Aneta Brodski's son was taken away to the NICU and, once

again, Aneta Brodski was unable to participate or effectively understand anything of what was being done to her and her baby without a sign language interpreter. Chris Besecker, instead of being able to rejoice in the birth of his first child, was reduced to the role of trying to aid in the communication in an effort to allay his wife's fears and inform her of what was transpiring with both herself and their newborn son.

25. The newborn baby ultimately spent three days in the NICU before being sent home. During this time, Defendants set up a process to have an interpreter present for two hours in the morning, and another two hours in the afternoon. However, during the other 20 hours of the day, Aneta Brodski was left not being able to effectively communicate with staff regarding her care and her baby's care. Any questions or concerns Aneta Brodski had were confined to the two hours in the morning and the two hours in the afternoon when an interpreter was present. Oftentimes during the entire rest of the day, she was left with no effective means of communicating.

26. As a result of Defendants' actions and their failure to provide reasonable accommodations for Aneta Brodski, her husband, Chris Besecker, was often forced to try to act as a communication aide for his wife with medical personnel. This was an extremely frustrating and emotional experience as Chris Besecker was there to experience the birth of his first child, not to serve as an interpreter for his wife for which he was not trained nor should he have been required to serve in this role, even if he had such training. In addition, as a further result of Defendants' inaction, Chris Besecker was forced into making repeated pleas to the staff requesting an interpreter which led to extreme emotional distress and alienation for both himself and his wife. Even after interpreters were finally provided sporadically after the birth, Chris Besecker was often forced to try to help his wife communicate as there were many instances in

9

which an interpreter was not present and whose presence was necessary. As a result of this, Chris Besecker was discriminated against due to his association with a disabled person and treated differently than other family members of non-disabled patients. As a direct result of defendants' failure to provide qualified interpreters when necessary for Plaintiff Aneta Brodski,  Plaintiffs' relationship with the medical providers became strained and fraught with tension creating an adversarial and extremely distressing situation. This in turn compromised Plaintiff Chris Besecker's  relationship with his wife and interfered with his ability to just be present at the hospital to provide comfort and support to his wife, to discuss the labor and delivery with medical providers as a father  and welcome his new baby.

Each and all of the above acts, both of omission and commission, were intentional acts of discrimination and each and all were a proximate cause of the damages suffered by plaintiffs.

### FIRST CLAIM FOR RELIEF
**Discrimination on the Basis of a Disability in
Violation of the Rehabilitation Act (29
U.S.C. § 794 *et. seq.*)**

27.  Plaintiffs re-allege and incorporates by reference each and every allegation above as if fully set forth herein.

28.  The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

29.  At all times relevant to this action, the Rehabilitation Act, 29 U.S.C. § 794 *et seq*.,was in full force and effect and applied to Defendants' conduct.

30.  Plaintiff Aneta Brodski is a qualified individual with a disability within the meaning of the Rehabilitation Act.  29 U.S.C. § 705(9)(B); 42 U.S.C. 12102.

31. Chris Besecker is Aneta Brodski's husband and was discriminated against and aggrieved because of his relationship and association with his disabled wife and defendants' failure to accommodate her disability.

32. Defendants receive federal financial assistance within the meaning of the Rehabilitation Act.  29 U.S.C. § 794(a).

33. The Department of Health and Human Services regulations implementing the Rehabilitation Act clarify the requirements for federal financial assistance recipients, such as Defendants, stating that "[a] recipient . . . that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory ... or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R § 84.52(d)(1).

34. Appropriate auxiliary aids include, but are not limited to, interpreters.  45 C.F.R. § 84.52(d)(3).

35. Defendants failed to comply with the Rehabilitation Act by refusing to provide to deaf and hard of hearing individuals, including Aneta Brodski:

- qualified interpreters;
- auxiliary aids and services;
- displays indicating availability of ASL interpreters;
- forms to ensure ability of individuals to designate ASL as their primary language;
- trained staff regarding the methods of communication employed by the deaf and hard of hearing, and how to ensure effective communications at its medical center;
- the provision/designation of an interpreter-ADA accessibility coordinator who would evaluate the needs of any deaf or hard of hearing individuals;
- policy and procedure to ensure compliance with the law;
- means of monitoring and reporting non-compliance with the law.

36. The above are examples of techniques employed by other institutions to provide

11

access to services, programs, benefits, activities and facilities for deaf and hard of hearing people in a manner consistent with the Rehabilitation Act and the ADA.

37. Defendants failed to provide sign language interpreters during all times necessary for effective communication during Aneta Brodski's stay at Defendants' facilities.

38. Aneta Brodski and Chris Besecker requested an interpreter repeatedly during Aneta Brodski's medical care and stay at Defendants' facilities.

39. Aneta Brodski was unable to effectively communicate with Defendants' staff, and she was excluded from discussions and decisions relating to her and her baby's treatment and evaluation at Defendants' premises, which would have directly benefitted Ms.Brodski and which were provided to other hospital patients. Chris Besecker was unable to be fully involved in these same discussions and decisions relating to both his wife's and baby's treatment as he had to constantly attempt to help with communication, unlike other fathers where the mother was nondisabled.

40. As a proximate result of Defendants' violations of Aneta Brodski's rights under the Rehabilitation Act, Aneta Brodski and Chris Besecker have suffered discrimination, unequal treatment, exclusion, violations of their rights under the laws of the United States, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, embarrassment, prolonged physical pain and unnecessary loss of rights, privileges and property, and nominal damages among other harms.

41. Defendants' failure to comply with the Rehabilitation Act has resulted in harm to Aneta Brodski and Chris Besecker.

42. As a result of Defendants' breaches of law, Aneta Brodski and Chris Besecker have

been damaged and injured and demand compensatory damages for prolonged and increased physical pain, loss of opportunity, dignitary harm and/or nominal damages as well as injunctive relief consistent with the reasonable accommodations noted above requiring the Defendants to operate in compliance with applicable laws and regulations.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Discrimination on the Basis of a Disability in Violation of**
**Title III of the Americans with Disabilities Act of 1990**
**(42 .S.C. § 12181 *et seq.*)**

43. Plaintiff re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

44. Title III of the ADA requires that, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

45. Plaintiff Aneta Brodski is a qualified individual. Aneta Brodski has a "disability" within the meaning of 42 U.S.C. § 12132(2).

46. Chris Besecker is Aneta Broski's husband and was discriminated and aggrieved because of his relationship and association with his disabled wife and defendants' failure to accommodate her disability.

47. Defendants' business is a place of "public accommodation" within the meaning of the ADA.  42 U.S.C. § 12181(7)(F).

48. Defendants own, lease (or lease to), or operate places of public accommodation. 42 U.S.C. § 12182(a).

49. Under Title III of the ADA, discrimination is identified, in part, as "a failure to take

such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, . . . or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

50. As described above, Defendants subjected Plaintiff to discrimination based upon Aneta Brodski's disabilities in violation of her rights under Title III of the ADA.

51. Defendants failed to provide Aneta Brodski with auxiliary services in the form of qualified interpreters.

52. Defendants failed to ensure that Aneta Brodski was not excluded, denied services, or otherwise treated differently than other individuals as required by 42 U.S.C. § 12182(b)(2)(A).

53. Defendants discriminated against Ms.Brodski and Chris Besecker by refusing to provide Aneta Brodski with qualified sign language interpreters during her evaluation and treatment.

54. Defendants treated Aneta Brodski differently than hearing individuals by not providing Aneta Brodski the necessary auxiliary services that would enable her to effectively communicate with staff during her evaluation and treatment at Defendants' premises. Chris Besecker was also treated differently than others with an association to a patient directly due to his association with a disabled person. This resulted in his own distinct and palpable injury.

14

55. As a proximate cause of Defendants' violations of Aneta Brodski's rights under Title III of the ADA, Aneta Brodski and Chris Besecker have suffered discrimination, unequal treatment, exclusion, violations of his rights under the laws of the United States, loss of dignity, frustration, humiliation, emotional distress, physical pain and suffering, anxiety, embarrassment, and unnecessary loss of rights, privileges, and property.

56. As a result of the Defendants' breaches of law, Aneta Brodski and Chris Besecker have been damaged and injured and demand injunctive relief consistent with the reasonable accommodations noted above requiring the Defendants to operate in compliance with applicable laws and regulations.

### THIRD CLAIM FOR RELIEF
**New York City Human Rights Law**
**(N.Y.C. Admin. Code § 8-101 *et seq.*)**

57. Plaintiffs re-alleges and incorporates by reference each and every allegation above as if fully set forth herein.

58. Plaintiff Annetta Brodski has a "disability" as defined in New York City Human Rights Law, Sec. 8-102 (16)(a), in that she is deaf.

59. Chris Besecker is Aneta Brodski's husband and was discriminated against and aggrieved because of his relationship and association with his disabled wife and defendants' failure to accommodate her disability.

60. Defendants' medical facility is a place of "public accommodation" within the meaning of New York City Human Rights Law, Sec. 8–102 (9). This facility is a "covered entity," in that it is prohibited from engaging in unlawful discriminatory practices. NY City Human Rights Law § 8–102 (1), (17).

61. Providing a sign language interpreter in order to allow deaf or hard of hearing

15

individuals to communicate with medical staff during evaluation and treatment at a medical facility is a "reasonable accommodation" within the meaning of New York City Human Rights Law, Sec. 8-102 (18).

62. Defendants discriminated against Aneta Brodski and Chris Besecker on the basis of Aneta Brodski's disability and failed to make a "reasonable accommodation" for Aneta Brodski's disability when they failed to provide Aneta Brodski with a qualified sign language interpreter (and working VRI) during her evaluation and treatment. New York City Human Rights Law, Sec. 8-107 (5), (15).

63. As a result of the Defendants' actions in violation of New York City Human Rights Law, Plaintiffs Aneta Brodski and Chris Bescker were damaged and injured.

64. Aneta Brodski and Chris Besecker were caused to suffer as a consequence of the Defendants' failure to provide Aneta Brodski with effective communication when seeking to discuss her and her baby's medical history, complaints, diagnosis and prognosis, due to Defendants' failure to provide reasonable accommodations such as qualified interpreters.

65. Defendants have wantonly, recklessly and maliciously acted with disregard for the rights and wellbeing of Plaintiff Aneta Brodski, and Plaintiff Chris Besecker. Plaintiffs are thereby entitled to punitive damages.

66. By reason of the foregoing, Plaintiffs demand compensatory and punitive damages and injunctive relief consistent with the reasonable accommodations noted above requiring Defendants to operate in compliance with applicable laws and regulations.

### FOURTH CLAIM FOR RELIEF
**New York State Human Rights Law**
**(N.Y. Exec. Law § 292)**

67. Plaintiffs re-allege and incorporate by reference each and every allegation

above as if fully set forth herein.

68. Plaintiff Aneta Brodski has a "disability" as defined in New York State Human

Rights Law Section 292 (21), in that she is deaf.

69. Chris Besecker is Aneta Brodski's husband and was discriminated against and

aggrieved because of his relationship and association with his disabled wife and defendants'

failure to accommodate her disability.

70. Tisch Hospital is a "place of public accommodation" within the meaning of

NY State Human Rights Law § 292 (9).

71. NYU Langone Health is a "place of public accommodation" within

the meaning of NY State Human Rights Law § 292 (9).

72. NYU Langone Hospitals is a "place of public accommodation" within

the meaning of NY State Human Rights Law § 292 (9).

73. Carnegie Imaging is a "place of public accommodation" within

the meaning of NY State Human Rights Law § 292 (9).

74. Defendants discriminated against Aneta Brodski and Chris Besecker based on

Ms.Brodski's disability in "directly or indirectly, to refuse, withhold from or deny to such

person any of the accommodations, advantages, facilities and privileges of any such place" of

public accommodation.  NY State Human Rights Law § 296 (2-a).

75. Defendants discriminated against Aneta Brodski and Chris Besecker based on Ms.

Brodski's disability and failed to make "reasonable accommodations" for her disability.  NY

State Human Rights Law § 292 (21).

76. Defendants' failure to comply with the New York State Human Rights Law

has resulted in harm to Aneta Brodski and Chris Besecker.

77. By reason of the foregoing, Plaintiff Aneta Brodski and Chris Besecker demand compensatory damages and injunctive relief consistent with the reasonable accommodations noted above requiring Defendants to operate in compliance with applicable laws and regulations.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.        Enter such declaratory and injunctive relief under Title III of the ADA, Section 504 of the Rehabilitation Act, New York City Human Rights Law, and New York State Human Rights Law, against Defendants and in favor of Plaintiffs as it deems appropriate to remedy past violations of the laws of the United States and to prevent future violations of the same, including making available to deaf and hard of hearing individuals, among other forms of relief:

- qualified interpreters;
- auxiliary aids and services;
- displays at Defendants' facility indicating availability of ASL interpreters;
- modification of health forms to ensure ability of individuals to designate ASL as their primary language;
- training for Defendants' staff regarding the methods of communication employed by the deaf and hard of hearing, and how to ensure effective communications at its medical center;
- provision/designation of an interpreter-ADA accessibility coordinator at Defendants' who would evaluate the needs of any deaf or hard of hearing individuals;
- changes in policy and procedure to ensure compliance with the law;
- implementation of means of monitoring and reporting non-compliance with the law.

b.        Enter judgment against the Defendants and in favor of Plaintiffs for such compensatory damages as suffered by Plaintiffs under Section 504 of the Rehabilitation Act including physical pain and suffering, loss of opportunity, dignitary harm and/or nominal damages as well as prejudgment interest. and such further relief as this Honorable Court deems just and equitable;

c.      Enter judgment against the Defendants and in favor of Plaintiffs for such injunctive, compensatory and punitive damages as suffered by Plaintiffs pursuant to New York City Human Rights Law and the New York State Human Rights law including emotional distress, physical pain and suffering, loss of opportunity, dignitary harm and/or nominal damages, as well as prejudgment interest and punitive damages as suffered by Plaintiffs pursuant to the New York City and State Human Rights Laws;

d.      Enter judgment against the Defendants and in favor of Plaintiffs for the costs of litigation, including reasonable attorneys' fees and costs;

e.      Award Plaintiffs any further relief the Court deems appropriate.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to each and every claim for which they are so entitled.

Dated:  June 9, 2023
New York, New York

Respectfully submitted,

By:___/s/ Clara R. Smit_____
Clara R. Smit, Esq.
100 Horizon Center Blvd
Hamilton, NJ, 08691

By:_/s/ Bruce Gitlin_____
Bruce J. Gitlin, Esq.
New York Center for Law and Justice
Suite 411
2095 Broadway
New York, NY 10023

By: /s/ Jonathan Berger
Levisohn Berger LLP
11 Broadway, Suite 615
New York, New York 10004